**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LNV CORPORATION, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-3803-L (BF) |
| | § | |
| BRANCH BANKING AND TRUST | § | |
| COMPANY, | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Orders of Reference, Defendant Branch Banking and Trust Company's ("BB&T") Motion to Dismiss or, in the Alternative, Motion to Transfer Venue to Florida (doc. 5) has been referred to the United States Magistrate Judge. Plaintiff LNV Corporation ("LNV") filed a timely response, and BB&T filed its timely reply. Upon careful consideration of the motion, response, and reply, the Court recommends that the District Court **DENY** BB&T's Motion to Dismiss, but **GRANT** BB&T's Alternate Motion to Transfer Venue. This Court recommends that the case be transferred to the Northern District of Florida.

## Background

This dispute concerns a loan acquired by BB&T from Colonial Bank, which was subject to a participation interest that was later acquired by LNV. (Pl.'s Compl. ¶¶ 7-13.) The loan was originated on May 11, 2006, from Colonial Bank to Owls Head Department, LLC ("Owls Head") in the principal amount of $26,000,000.00 (the "Owls Head Loan"). (*Id.* at ¶ 9.) Another lender, Magnet Bank, held a 23.08% participation interest in the Owls Head Loan, pursuant to a Participation Agreement between Colonial Bank and Magnet Bank. (*Id.* at ¶ 10.) When Magnet Bank

closed, LNV acquired its participation interest in the Owls Head Loan. (*Id.* at ¶¶ 12-13.) Thus, after both of the aforementioned acquisitions, the Participation Agreement became binding upon LNV and BB&T. (*Id.* at ¶ 14.)

The Owls Head Loan was guaranteed by Douglas Duncan, Jeffrey S. Tucker, and Larry T. Ross (collectively referred to as the "Guarantors"). (*Id.* at ¶ 18.) The Guarantors also guaranteed another loan which BB&T acquired from Colonial Bank that was made to JLD Freeport Investments, Inc. ("JLD Freeport") in the amount of $9,450,000.00 (the "JLD Freeport Loan"). (*Id.* at ¶¶ 9, 18.) The Guarantors are the principals for both Owls Head and JLD Freeport. (*Id.* at ¶ 18.) LNV does not claim a participation interest in the JLD Freeport Loan. (*See id.* at ¶¶ 10, 13.) Both of the loans were secured by real property in or near the City of Freeport, Walton County, Florida. (*Id.* at ¶ 19.) Upon Owls Head and JLD Freeport's default on the loans, BB&T pursued foreclosure litigation in the Circuit Court of Walton County, Florida. (*Id.* at ¶ 24.) BB&T also filed separate lawsuits against the Guarantors in both Walton County, Florida and in Georgia state court. (*Id.*) The lawsuits against Owls Head and JLD Freeport were initially filed separately, but later consolidated for discovery and other purposes. (*Id.* at ¶ 26.) BB&T ultimately settled the Owls Head and JLD Freeport lawsuits. (*Id.* at ¶¶ 29-39.)

LNV filed this action in federal court pursuant to diversity jurisdiction, alleging causes of action for breach of contract, conversion, and accounting. (*Id.* at ¶¶ 3-4, 45-61.) Essentially, LNV contests BB&T's settlement agreement concerning the Owls Head Loan. LNV contends that it did not consent to the settlement as required under the Participation Agreement, and BB&T owes additional sums of money to LNV pursuant to the Participation Agreement. (*Id.* at ¶¶ 36, 42-43.) BB&T filed a motion seeking this court to dismiss the action for lack of personal jurisdiction or

improper venue, or to transfer the action to the Northern District of Florida. The motion is ripe for adjudication.

## Standard of Review

Federal law governing the venue in which an action may be brought provides:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Texas is a multi-district state, and thus when a suit is filed against a corporation, the corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . ." 28 U.S.C. § 1391(d). Large corporations, such as BB&T, typically have sufficient contacts to satisfy § 1391(d) for most, if not all, federal venues, thus "the general venue statute has the effect of nearly eliminating venue restrictions in suits against corporations." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) (citation and internal quotation marks omitted). Accordingly, Congress enacted the venue transfer statute, 28 U.S.C. § 1404, to counteract such effects. *Id.* "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Id.* (citation omitted).

The terms of § 1404(a) provide that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A court may transfer a case upon a motion or *sua sponte*. *See* 28 U.S.C. § 1404. The court has broad discretion in deciding whether to order a transfer. *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987); *accord Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989). If a motion to transfer venue has been filed, the movant has the burden to establish why the forum should be changed. *Barton v. Young,* 144 F.Supp.2d 685, 687 (E.D. Tex. 2001) (citing *Enserch Int'l Exploration v. Attock Oil Co.*, 656 F.Supp. 1162, 1167 n.15 (N.D. Tex. 1987). First and foremost, the movant must demonstrate that venue is proper in the proposed district. *Id.*

In determining whether a transfer is appropriate, a district court must weigh the private interests of the litigants and the public interest in the fair and efficient administration of justice. *In re Volkswagen of Am.,* 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). While the plaintiff's choice of venue is entitled to deference, it is not considered as an independent factor in a § 1404(a) analysis. *AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, No. 3:08-CV-1637-M, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary

4

problems of conflict of laws [or] the application of foreign law." *Id.* This Court will now weigh the relevant factors to determine if transfer of this action is appropriate.

## Analysis

As a preliminary matter, both parties agree, and thus it is undisputed, that this case could have been brought in the Northern District of Florida. (*See* Def.'s Mot. at 16-17; Pl.'s Resp. at 15.) A substantial part of the events giving rise to this lawsuit occurred in the Northern District of Florida. (Def.'s Mot. at 17.) Furthermore, BB&T's Destin office was the primary office involved in the underlying facts alleged in LNV's Complaint. (*Id.*) Thus, venue would be proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b)(2).

LNV does dispute, however, whether BB&T has satisfied its burden of demonstrating that the private and public interest factors *strongly* weigh in favor of transfer. (Pl.'s Resp. at 14-15.) LNV cites a case from the Eastern District of Pennsylvania to support its contention, but LNV is mistaken. (*Id.*) In the Fifth Circuit, the burden on the movant seeking transfer is to show "good cause," which may be established by demonstrating that the desired venue is "clearly more convenient" than the venue chosen by the non-movant. *In re Volkswagen Am,* 545 F.3d at 315 ("When the movant demonstrates that the transferee venue is clearly more convenient, . . . it has shown good cause and the district court should therefore grant the transfer.") The Court will now examine the private and public interest factors to determine if the Northern District of Florida is *clearly* more convenient than the Northern District of Texas.

## Private Interest Factors

The first private interest factor concerns the relative ease of access to proof. BB&T has alleged the following witnesses, residing in the Northern District of Florida: Susan Bell, Philip

Justiss, Randall Chandler, and lawyers at the law firm of Clark, Partington, Hart, Larry, Bond & Stackhouse. (Def.'s Reply at 10.) BB&T has alleged two witnesses who live in the Middle District of Florida, Tom Aderhold and Jim Kidder, and one witness located in the Southern District of Florida, Douglas Duncan. (*Id.*) BB&T recognizes that one witness lives in the Eastern District of Texas, Miguel Alvarez. (*Id.*) LNV alleges the following witnesses, all of whom reside in the Eastern District of Texas: Miguel Alvarez, Douglas J. Kroiss, W.T. Saurenmann, and James Erwin. (App. to Pl.'s Resp. 4-5.) Neither party has alleged any witnesses who reside in the Northern District of Texas. The Court finds that a majority of the material witnesses reside in Florida, as opposed to Texas.

BB&T claims that a majority of the material documentary evidence exists in Florida, but LNV claims that voluminous documents exist in Texas. BB&T alleges the following documents as being located in Florida: loan documents concerning the Owls Head Loan and the JLD Freeport Loan; all correspondence and documents regarding the administration and collection of those loans; correspondence and documents concerning the lawsuits filed by BB&T in Florida; appraisal documents regarding the real estate at issue, which is located in Florida; documents in the possession of Douglas Duncan, one of the guarantors on both of the loans; and documents retained by LNV's counsel in Florida. (App. to Def.'s Mot. at 3.) On the other hand, LNV claims to have the following documents: documents concerning its acquisition of Magnet Bank; all documents and correspondence concerning the Owls Head Loan; appraisals and tax-related documents; financial information related to the Guarantors of the Owls Head Loan; documents and correspondence concerning the Florida and Georgia lawsuits, which the Florida attorneys mailed to LNV; and legal invoices concerning those lawsuits from the law firm in Florida. (App. to Pl.'s Resp. at 5-6.) The

6

Court finds that BB&T has met its burden to identify "categories of proof" located in the Northern District of Florida. *See Sivertson v. Clinton*, No. 3:11-CV-0836-D, 2011 WL 4100958, at *5 (N.D. Tex. Sept. 14, 2011) (citation omitted). LNV has failed to allege that any of its documents are located in the Northern District of Texas. Further, the Court finds that an overwhelming amount of the material evidence is located in the Northern District of Florida: the appraiser and real estate at issue, the law firm that prosecuted the lawsuits, material witnesses, and BB&T's principal office that managed the Owls Head and JLD Freeport loans and the Florida lawsuits. The Court finds that this factor weighs in favor of transfer.

The second factor concerns the availability of compulsory process to secure the attendance of witnesses. BB&T has identified two witnesses for whom compulsory process will be sought: Randall Chandler and Douglas Duncan. (App. to Def.'s Mot. at 4.) However, BB&T has failed to allege that these two non-party witnesses are unwilling to testify, as required. *See AllChem Performance Prod., Inc. v. Oreq Corp.*, No. 3:11-CV-3577-D, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013). Similarly, LNV alleges non-party witnesses who may be subject to compulsory process, but fails to allege that any of them would be unwilling to testify. (Pl.'s Resp. at 17.) Thus, the Court finds this factor to be neutral. *See AllChem Performance Prod.,* 2013 WL 180460, at *4 ("Because there is no evidence that either side requires compulsory process to obtain testimony in either venue, this factor is neutral.").

The third private interest factor examines the cost of attendance to willing witnesses. BB&T claims that it has four party witnesses, two non-party witnesses, and non-party witnesses from the law firm that litigated the Florida lawsuits, all of whom are located in Florida and would be required to travel to Texas. (Def.'s Mot. at 19; Def.'s Reply Br. at 10.) LNV alleges that it has four non-party

witnesses in Plano, Texas who would be required to travel to Florida. (Pl.'s Resp. at 18.) LNV urges

this Court not to consider BB&T's party witnesses in weighing this factor. (Pl.'s Resp. at 16-17.)

The Northern District of Texas has found that the cost of attendance to willing witnesses

primarily concerns the convenience of non-party witnesses. *See AT & T Intellectual Prop. I,* 2009

WL 774350, at *5; *AllChem Performance Prod.,* 2013 WL 180460, at *4. However, the Court has

also found that it "must primarily consider the convenience of key witnesses." *Kimberly-Clark*

*Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 3:09-CV-0488-D, 2009 WL 2634860, at *6

(N.D. Tex. Aug. 26, 2009). This Court is unable to say with certainty that all four of LNV's

witnesses are key to this action. Three of the witnesses identified by LNV are to testify regarding the

same issues: the decision to object to the proposed settlement offer referenced in an email from

Susan Bell dated August 23, 2011, and the request to BB&T for additional information regarding

the finances of the Guarantors and full disclosure of the settlement terms for the Owls Head Loan

and the JLD Freeport Loan. (App. to Pl.'s Resp. at 4-5.) One of those witnesses, Douglas J. Kroiss,

is also expected to testify regarding the acquisition of the Owls Head Loan and the related

Participation Agreement. (*Id.)* W.T. Saurenmann and James Erwin are expected to have the same

testimony, and thus the Court  cannot find that both of them would be necessary and key witnesses

for LNV.

BB&T's non-party witnesses include the appraiser of the real estate, Randall Chandler, one

of the Guarantors, Douglas Duncan, and the litigation attorneys at Clark, Partington, Hart, Larry,

Bond & Stackhouse. (Def.'s Mot. at 19; Def.'s Reply Br. at 10.) Although BB&T did not list the

litigation attorneys by name, the Court agrees with BB&T that at least one attorney could be called

to testify as a fact witness because the settlement of the Florida lawsuits is at the heart of this matter.

BB&T's non-party witnesses are key witnesses to this action. However, Douglas Duncan is located in the Southern District of Florida, and thus will still have to travel if venue is transferred. While party witnesses should not be accorded great weight, the Court notes that BB&T has four party witnesses located in Florida, whereas LNV has none. *See AT & T Intellectual Prop. I,* 2009 WL 774350, at *5 (explaining that non-party witnesses should be accorded the greatest weight).

In sum, the Court finds this factor to be neutral. On the one hand, BB&T clearly has more key witnesses who will have to travel to Texas. However, LNV has a few non-party witnesses who reside in Plano, Texas, which is just outside the Northern District of Texas. "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Kimberly-Clark Worldwide*, 2009 WL 2634860, at *2. This factor does not necessarily favor transfer, nor does it favor maintaining venue in the Northern District of Texas. Therefore, the Court finds the factor is neutral.

The final private interest factor includes all other practical problems that make trial of a case easy, expeditious and inexpensive. BB&T repeats arguments that this Court has already analyzed in the other private interest factors, and thus the Court will not consider them in this factor as well. The only new contention that BB&T claims is that it has already retained counsel in Florida from its previous lawsuits who are familiar with this matter, and thus hiring new counsel in Texas will unnecessarily increase the costs of litigation. (Def.'s Mot. at 20-21.) LNV counters that the location of counsel is not a factor to be considered, and the Florida attorneys represented LNV and BB&T's interests in the previous litigation, and thereby would have a conflict of interest in representing BB&T against LNV. (Pl.'s Resp. at 18-19.) This Court agrees with LNV. In the Fifth Circuit, the location of counsel is not a proper factor in a § 1404(a) analysis. *See In re Horseshoe Entm't*, 337

9

F.3d 429, 434 (5th Cir. 2003). Furthermore, the Florida law firm may have a conflict of interest in representing BB&T in this lawsuit against LNV since it previously represented the interests of LNV. The Court finds this factor to be neutral. *See AllChem Performance Prod.,* 2013 WL 180460, at *5 (finding the fourth private interest factor neutral because defendants merely repeated arguments the court had already considered in assessing the other private interest factors).

**Public Interest Factors**

The parties agree that the first factor, the administrative difficulties flowing from court congestion, is neutral.

The second public interest factor examines the interest in having localized interests decided at home. The Northern District of Texas has recognized that this factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *Id.* at *6 (citation and internal quotation marks omitted). Here, the acts giving rise to the present action predominately occurred in the Northern District of Florida. The real estate which secured both the Owls Head Loan and the JLD Freeport Loan is located in Walton County, Florida, which is in the Northern District of Florida. The lawsuits filed against Owls Head and JLD Freeport when they defaulted on the loans, were filed in the Circuit Court of Walton County, Florida. The lawsuits against the Guarantors on the loans were filed in Walton County, Florida and in Georgia state court. The settlement agreement and related transactions, which are the focal point of this lawsuit, arose out of BB&T's office in Destin, Florida. Finally, a majority of the witnesses reside in Florida, including the appraiser and the law firm that represented the interests of LNV and BB&T in the aforementioned lawsuits.

LNV contends that Texas has a strong interest in adjudicating a dispute which involves one of its own residents. (Pl.'s Resp. at 19-20.) First, the Court points out that LNV's principal place of

business is actually in the Eastern District of Texas, and not in the Northern District of Texas. (*Id.* at 19.) While the plaintiff's choice of forum is usually entitled to deference, "[t]he weight to be accorded the plaintiff's choice of forum is diminished . . . where [it] brings suit outside [its] home forum." *Sivertson*, 2011 WL 4100958, at *3 (citation omitted). Here, LNV's home forum is the Eastern District of Texas, but it filed this lawsuit in the Northern District of Texas.[1] Thus, LNV's choice of forum is entitled to less deference.  Additionally, LNV argues that Texas has an interest in this suit because BB&T was required to send payments, correspondences and documents to LNV in Texas. (Pl.'s Resp. at 20.) However, the Northern District of Texas has found that repeated letters and phone calls to a forum are insufficient to confer venue in that forum. *See Ancel v. Rexford Rand Corp.*, No. 3:93-CV-2379-H, 1994 WL 539287, at *3 (N.D. Tex. Sept. 19, 1994). Accordingly, letters and payments sent to LNV in the Eastern District of Texas are accorded little weight in analyzing this factor. The Court finds that while Texas does have an interest in protecting a Texas corporation, there is little evidence to show that the Northern District of Texas has an interest in this case. Instead, a majority of the acts giving rise to this lawsuit occurred in the Northern District of Florida. This factor weighs in favor of transfer.

The third and fourth factors relate to the familiarity of the forum with the applicable law and any conflicts of law issues. BB&T contends these factors weigh in favor of transfer because Georgia law is applicable to some of the dispute, and since Florida borders Georgia, Florida is more likely to be familiar with Georgia law than Texas. (Def.'s Mot. at 22.) BB&T also argues that if there are any conflicts of law issues, such conflicts would be between Georgia and Florida, where a substantial

---

[1] The Court notes that, in its response brief, LNV requests the Court to transfer venue to the Eastern District of Texas. (Pl.'s Resp. at 14.) However, such request should be denied, as it would not impact this Court's recommendation.

portion of the events occurred, and not Texas. (*Id.*) LNV counters that these factors are neutral. This Court agrees. The choice of law provision in the Participation Agreement, the contract at issue in this case, indicates that the agreement shall be governed by Georgia law. (App. to Pl.'s Resp. at 38.) BB&T fails to allege what issues, if any, would be governed by Florida law. Neither Florida nor Texas are presumed to be familiar with Georgia law. These last two factors are neutral.

While the Court found a majority of the factors to be neutral, two of the factors weigh in favor of transfer: the relative ease of access to proof and the local interest in having localized interests decided at home. The operative facts underlying this lawsuit occurred in Florida, and the documents and material witnesses are located in Florida. The prior litigation related to this lawsuit was in the Circuit Court of Walton County, Florida. Therefore, Florida has a strong interest in resolving subsequent disputes concerning similar issues, and Florida property, in its courts. The Court finds that these two factors, combined, suffice to demonstrate that the Northern District of Florida is a clearly more convenient forum than the Northern District of Texas. *See AllChem Performance Prod.,* 2013 WL 180460, at *7 (holding that transfer of venue was warranted where ease of access to proof and localized interests favored transfer, but the remaining factors were neutral); *Carolei v. Tex. Mesquite Connection*, No. 3:11-CV-2811-L, 2012 WL 3599460, at **2-3 (N.D. Tex. Aug. 6, 2012), *rec. adopted*, 2012 WL 3613971 (N.D. Tex. Aug. 22, 2012) (same); *Kimberly-Clark Worldwide*, 2009 WL 2634860, at *9 (same). Thus, the Court finds that BB&T has met its burden of establishing good cause to transfer this case pursuant to § 1404(a).

## Recommendation

For the foregoing reasons, the Court recommends that the District Court **DENY** BB&T's Motion to Dismiss, but **GRANT** BB&T's Alternate Motion to Transfer Venue (doc. 5). The Court

recommends that the case be transferred to the Northern District of Florida.

   **SO RECOMMENDED**, March 12, 2013.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).